UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cr-60317-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

THOMAS A. GUERRIERO,

    Defendant.
_____/

**ORDER ON MOTION FOR REDUCTION IN SENTENCE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

**THIS CAUSE** is before the Court upon Defendant Thomas A. Guerriero's ("Defendant") Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. [554] (the "Motion"), filed on September 24, 2021. The Government filed its Response, ECF No. [561], to which Defendant filed a Reply, ECF No. [562]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case and the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.    BACKGROUND**

On December 10, 2015, Defendant was indicted by a grand jury on ten charges, including: one count of conspiracy to commit wire and mail fraud, three counts of wire fraud, three counts of mail fraud, two counts of tampering with a witness, and one count of obstruction of justice. ECF No. [3]. On February 29, 2016, Defendant entered into a guilty plea to one count of conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349. ECF Nos. [151], [154]. On May 13, 2016, Defendant was sentenced to a term of imprisonment of 151 months, followed by a term of

three years of supervised release. ECF Nos. [269], [270], [426]. Defendant is 45 years old and currently housed at FCI Coleman Low. Defendant is scheduled to be released from custody on September 6, 2025.

In the Motion, Defendant requests compassionate release, arguing that extraordinary and compelling circumstances, including his remarkable rehabilitation and contributions to the Bureau of Prisons ("BOP"), and serious medical conditions coupled with the dangers posed by COVID-19 warrant such relief. The Government opposes the Motion.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with close to 46,541,113 confirmed cases and over 753,564 reported deaths as of November 10, 2021.[1] The COVID-19 pandemic poses a serious danger to society at large and poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices. In addition, the new and more contagious Delta variant of the coronavirus is now the predominant strain of the virus in the United States and can cause more severe illness in unvaccinated individuals.[2]

As a result of this dynamic, unpredictable, and unprecedented situation, former Attorney General William Barr urged the BOP to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by

---

[1] *COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (accessed November 10, 2021).

[2] *Delta Variant: What We Know About the Science*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last updated August 19, 2021).

COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The former Attorney General made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II.     LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the

modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

The compassionate release provision, § 3582(c)(1)(A), states:

(c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
(1) in any case—
(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
   (i) extraordinary and compelling reasons warrant such a reduction . . . .
   . . . .
and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The existing policy statement provides that,

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the

4

factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

**Commentary**

**Application Notes:**

1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) **Medical Condition of the Defendant.**—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health

>   because of the aging process; and (iii) has served at least 10 years or 75
>   percent of his or her term of imprisonment, whichever is less.
>
> (C) **Family Circumstances.**—
>
>   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2018).

Although the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons," the Court of Appeals for the Eleventh Circuit recently decided that § 1B1.13 is applicable for all § 3582(c)(1)(A) motions, whether filed by the BOP or by a defendant directly, and that courts do not have discretion to develop "other reasons" to justify a reduction in a defendant's sentence. *See United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021). Accordingly, the Court must apply § 1B1.13 to determine whether extraordinary and compelling circumstances exist.

Moreover, § 3582 delineates how this Court should analyze whether a defendant is entitled to a sentence modification.

> *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the

>defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020).

Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

## III. DISCUSSION

In his Motion, Defendant argues that compassionate release is warranted because the BOP itself has acknowledged his exemplary efforts during his incarceration, and that such efforts constitute extraordinary and compelling circumstances. In addition, Defendant argues that he suffers from serious medical conditions, that COVID 19 threatens vulnerable people like him, and diminishes his ability to provide self-care. The Government opposes Defendant's request, arguing that his "accomplishments, contributions, and rehabilitations" are irrelevant to the Court's determination of whether extraordinary and compelling circumstances exist here, and further, that Defendant's medical issues do not rise to the level of extraordinary and compelling. The Court considers each argument in turn.

### A. Exhaustion of administrative remedies

As an initial matter, the Court recognizes that Defendant has satisfied the administrative exhaustion inquiry of the compassionate release analysis, *see* ECF No. [554-1], and the Government does not dispute that the exhaustion requirement has been satisfied. However, as explained below, Defendant fails to demonstrate that extraordinary and compelling circumstances exist in this case.

### B. Extraordinary and compelling circumstances

i. Medical conditions

Recently updated CDC guidance indicates that the following health conditions can make adults of any age more likely to get severely ill due to COVID-19: cancer; chronic kidney disease; chronic lung diseases, including asthma (moderate to severe) and pulmonary embolism; dementia or other neurological conditions; diabetes (type 1 or type 2); Down syndrome; heart conditions, such as heart failure, coronary artery disease, cardiomyopathies, or hypertension; HIV infection, immunocompromised state (weakened immune system); mental health conditions; overweight and obesity; pregnancy; sickle cell disease or thalassemia; current or former smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; substance use disorders; and tuberculosis.[3]

However, in keeping with § 1B1.13,[4] in order for Defendant's medical conditions to provide justification for compassionate release, the Court must find that Defendant is either

---

[3] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated October 14, 2021).

[4] Recent Eleventh Circuit precedent in *Bryant* makes clear that this Court is strictly confined to consideration of only the circumstances described in the Sentencing Guidelines in determining whether extraordinary and compelling circumstances exist. 996 F.3d at 1248.

suffering from a terminal illness, or that his serious physical or medical conditions, or serious functional or cognitive impairments, substantially diminish his ability to provide self-care and from which he is not expected to recover. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. 1(A). Upon review of Defendant's Motion and his medical records, the Court concludes that the record in this case does not support either finding under the Sentencing Guidelines.

In the Motion, Defendant contends that he has an extensive history of medical conditions, and that he is immunocompromised due to his history of cancer, pulmonary embolisms, deep vein thrombosis ("DVT"), blood clots in his lungs, chest, pelvis, and legs, and repeated bouts of diverticulitis, which have required hospitalizations, multiple surgeries, and resection of his colon. ECF No. [554] at 4-5. He also suffers from asthma and obesity. *Id*. at 5. However, his medical records do not support Defendant's contention that his medical conditions rise to the level of extraordinary and compelling circumstances justifying compassionate release.

First, while the Court acknowledges that the records Defendants has provided document the history of his listed medical conditions, some of which are designated by the CDC as increasing the possibility of severe illness from COVID-19, the records date from more than five years ago, and therefore do not shed light on his current condition. *See* ECF No. [554-3] (records dating from 2015, prior to incarceration); ECF No. [554-4] (records dating back to 2013). Defendant has provided no recent medical records since his incarceration which would explain his current medical conditions or the care he has received while incarcerated. Second, while he contends that he requires a low bunk due to his history of DVTs and pulmonary embolisms, the documents he has provided do not reflect those reasons. *See* ECF No. [554-5] at 7, 9 (designating "lower bunk," but not providing a reason for the designation). In addition, the designation forms show that he is cleared for work subject to no restrictions. *See id*. Similarly, though he contends that he is not

9

receiving adequate care in custody, the two documents he purports to show that necessary medical procedures have been canceled, reflect only that he was scheduled for an in-house medical procedure on September 28, 2017. ECF No. [554-5] at 2-5. Other than that, Defendant has provided no other documentation from his time in custody to substantiate his medical conditions.

Nevertheless, Defendant argues that COVID-19 threatens vulnerable individuals like him and diminishes his ability to provide self-care. While the Court is certainly sympathetic to Defendant's health conditions and his concerns regarding COVID-19 outbreaks in prison facilities, Defendant's medical records otherwise do not support the conclusion that he is unable to perform activities of daily living or provide self-care.[5] "[T]he BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . .")). In sum, Defendant has provided no basis for the Court to conclude that his ability to provide self-care in the prison setting is significantly diminished as a result of his medical conditions.

    ii.  Other reasons

Defendant's main argument for compassionate release is that he has engaged in extensive rehabilitation efforts, which have been recognized and acknowledged by the BOP. He urges the Court to consider his efforts to be sufficiently extraordinary and compelling to warrant compassionate release.

---

[5] The Court notes that FCI Coleman Low, where Defendant is housed, is currently reporting 0 COVID cases among staff and inmates. *See COVID -19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed November 11, 2021).

However, the Court may not. The Eleventh Circuit has made it clear that, in determining the existence of extraordinary and compelling circumstances, the Court is confined to consideration of the circumstances described in the applicable Sentencing Guidelines Policy Statement, and that courts do not have discretion to develop "other reasons" to justify a reduction in a defendant's sentence. *Bryant*, 996 F.3d 1243 at 1248. Although Defendant argues that the application of *Bryant* results in an unlawful sub-delegation of authority to the BOP, the Court is not free to disregard or re-evaluate binding authority from the Eleventh Circuit. Unless and until a subsequent decision invalidates *Bryant*, this Court is required to apply it, and is not free to determine other reasons constituting extraordinary and compelling circumstances.

Defendant has therefore failed to establish that extraordinary and compelling circumstances exist for either medical or other reasons, such that compassionate release would be warranted in his case.[6]

## IV.    CONCLUSION

Accordingly, Defendant's Motion, **ECF No. [554]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 11, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[6] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances, the Court need not address the remaining considerations under § 3553(a) or § 3142(g).